**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

**FRANCISCO SOTO,** on behalf of himself and all others similarly situated,

Plaintiff,

**-v.-**

**LOOK OPTIC, LLC,**

Defendant.

-------------------------------------------------------------x

Case No. __________

**AMENDED CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff **FRANCISCO SOTO** ("Plaintiff" or "Mr. Soto"), individually and on behalf of all others similarly situated, by and through his undersigned counsel, brings this action against **LOOK OPTIC, LLC** ("Look Optic" or "Defendant") for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., arising from Defendant's failure to design, construct, maintain, and operate its ecommerce website, www.LookOptic.com, in a manner that is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. **Plaintiff Francisco Soto** is a resident of New York County and is permanently disabled due to **advanced Wet Age-Related Macular Degeneration ("Wet AMD")**, a degenerative retinal disease that has caused **severe and irreversible central vision loss**. His treating retina specialist at NYU Langone Eye Center confirms that Mr. Soto retains only "bare perception of objects at best," with profound impairment in central acuity, contrast sensitivity, and fine-detail recognition. His condition "meets the clinical criteria for legal blindness," and the vision loss he has sustained is permanent. Exhibit A

2. As a legally blind individual, **Mr. Soto relies exclusively on screen-reading software and keyboard navigation** to access digital content independently. Because he cannot

visually interpret website content, he depends on websites to provide proper semantic structure, meaningful alternative text, labeled interactive elements, and screen-reader compatible navigation. For Mr. Soto, accessible coding is not optional—it is the only means by which he can access the internet.

3. In 2026, Mr. Soto sought to independently browse and purchase sunglasses suitable for his visual condition. Due to his Wet AMD, he experiences **severe glare sensitivity**, photophobia, and discomfort in bright environments. In addition, his condition causes **visible retinal scarring and distortion**, which draw unwanted attention from others. Sunglasses are therefore essential both for **functional mobility** and for **cosmetic comfort**, allowing him to feel more confident and less self-conscious in public. Plaintiff specifically attempted to research and purchase **Look Optic's "Muse Tints"** and **"Cosmo Sun"** sunglasses.

4. According to the United States Census Bureau, millions of Americans live with significant visual impairments, including more than two million who are legally blind. Congress enacted the ADA to eliminate discrimination against individuals with disabilities and ensure full integration and equal access. The Department of Justice has repeatedly affirmed that the ADA applies to the goods, services, and activities offered by public accommodations on the web.

5. The internet has become an indispensable tool for modern life. It is a primary means of shopping, banking, learning, communicating, and accessing essential goods and services. For blind and visually impaired individuals, equal access to websites is critical to participating in society on equal terms. When websites are not designed to be compatible with screen-reading software, blind users are excluded from the digital marketplace and denied the independence that sighted users take for granted.

6. Screen-reading software works by converting digital content into synthesized speech or refreshable Braille. For this technology to function, website content must be capable of being

rendered into text. Websites that lack alternative text for images, contain unlabeled buttons or links, use improper heading structure, rely on mouse-only interactions, or contain broken ARIA references cannot be interpreted by screen readers. As a result, blind users cannot navigate, understand, or interact with such websites, and are denied equal access to the goods and services offered.

7. The World Wide Web Consortium (W3C) has published the Web Content Accessibility Guidelines (WCAG 2.1), which are widely recognized as the industry standard for accessible website design. These guidelines are followed by major corporations, government agencies, and public institutions to ensure that digital content is accessible to blind and visually impaired users. Compliance with WCAG 2.1 is readily achievable and necessary to provide equal access under the ADA.

8. Plaintiff brings this civil action against Look Optic, LLC, the operator of **LookOptic.com**, for its failure to design, construct, maintain, and operate its highly interactive retail ecommerce platform in a manner that is fully accessible to blind and visually impaired individuals. Defendant's denial of full and equal access to its Website—and therefore to the goods and services offered therein—constitutes a violation of Plaintiff's rights under Title III of the ADA.

9. On **February 10, 2026**, **February 11, 2026**, **March 9, 2026**, and **April 21, 2026**, Plaintiff attempted to access Defendant's Website using screen-reader technology to research and purchase the **Muse Tints** and **Cosmo Sun** sunglasses. He attempted to review lens types, tint options, frame shapes, and product descriptions before completing a purchase.

10. Despite multiple attempts across these four dates, Plaintiff was unable to independently complete his objectives due to pervasive access barriers. Automated WAVE audits conducted on **April 21, 2026**, of the exact pages Plaintiff attempted to access revealed **48 Errors** on the Men's Readers page and **49 Errors** on the Sunglasses page, including missing alternative text, missing form labels, empty headings, broken ARIA references, redundant links, and contrast

failures.

11. The accessibility barriers were systemic and not limited to isolated pages. The Men's Readers audit identified **123 contrast issues** and **874 alerts**, while the Sunglasses audit identified **227 errors**, **110 alerts**, and **569 contrast issues**. These findings confirm that Defendant's Website is not coded in a manner compatible with screen-reader technology and denies blind users equal access to the goods and services offered. Exhibit B

12. In addition to the WAVE findings, Plaintiff conducted an automated SortSite accessibility audit of Look Optic's Website. Even at only **24% completion**, the SortSite scan identified **19 Level A violations across 128 pages**, including: keyboard-inaccessible controls on **116 pages**, missing alternative text on **78 pages**, improper or illegal ARIA naming on **102 pages**, contrast failures on **34 pages**, broken focus outlines on **39 pages**, decorative images lacking null alt attributes, invalid ARIA roles, nested interactive elements (including <a> elements inside <a> and <button> elements inside <a>), missing language attributes, improper list structure, and autoplaying videos and animated images longer than five seconds without pause controls. These findings confirm that the accessibility barriers Plaintiff encountered are **systemic**, **site-wide**, and **inherent to Look Optic's design and coding practices**, rendering the Website incompatible with screen-reader technology and WCAG 2.1 AA standards. Exhibt C

13. Defendant operates a retail ecommerce platform through which consumers can browse eyewear, review product-specific information, and purchase items directly online. Plaintiff specifically sought out Defendant because of its advertised selection of premium sunglasses, including the **Muse Tints** and **Cosmo Sun**, which he needs due to his severe visual impairment and his desire to reduce glare and avoid unwanted attention to his eyes

14. Plaintiff seeks a permanent injunction requiring Defendant to revise its corporate policies, practices, and procedures to ensure that LookOptic.com becomes and remains accessible

to blind and visually impaired users. Without remediation, Plaintiff and other blind consumers remain excluded from equal participation in Defendant's online marketplace.

**JURISDICTION & VENUE**

15. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, including Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*.

16. This Court has supplemental jurisdiction over Plaintiff's related state and local law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's federal ADA claims.

17. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff resides in **New York County**, accessed Defendant's Website, **LookOptic.com**, from within this District, and experienced the discriminatory barriers alleged herein in this District. Courts in this Circuit have repeatedly held that venue is proper where a plaintiff encounters website accessibility barriers. See Velazquez v. Don Roberto Jewelers, Inc., No. 1:22-cv-05049 (S.D.N.Y. 2023) (Ramos, J.) (venue proper where plaintiff encountered website barriers in the district); see also Romero v. 88 Acres Foods, Inc., 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022).

18. Defendant is subject to personal jurisdiction in this District because it purposefully directs business activities toward New York consumers through its highly interactive ecommerce Website, **LookOptic.com**, which allows users to browse inventory, review product information, select lens and tint options, create accounts, and complete purchases. Defendant ships products directly to New York residents and derives substantial revenue from sales to consumers in this State. Courts in this Circuit have consistently held that operators of nationwide ecommerce websites are subject to personal jurisdiction in New York when they purposefully avail themselves of the

privilege of conducting business here. See Andrews v. Blick Art Materials, LLC, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); Reed v. 1-800-Flowers.com, Inc., 327 F. Supp. 3d 539 (E.D.N.Y. 2018).

19. The United States Department of Justice has repeatedly confirmed that the ADA applies to the goods, services, privileges, and activities offered by public accommodations on the web. The DOJ's Guidance on Web Accessibility and the ADA states that the ADA's requirements apply to all services offered by public accommodations, including those offered online.

20. This Court is empowered to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

21. Plaintiff **Francisco Soto** is, and at all relevant times was, a resident of **New York County, New York**. Mr. Soto is **legally blind** and a member of the protected class of individuals under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)–(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the protections afforded under New York State and New York City law. As confirmed by his treating retina specialist at NYU Langone Eye Center, Mr. Soto suffers from **advanced Wet Age-Related Macular Degeneration**, a permanent degenerative retinal condition that causes severe central vision loss, profound impairment in contrast sensitivity, and drastically reduced visual acuity. His condition meets the clinical criteria for legal blindness and requires the use of **screen-reading software** to access digital content independently.

22. Plaintiff is a proficient user of screen-reader technology, including **NVDA**, and relies on keyboard navigation and accessible coding to browse, understand, and interact with websites. Because he cannot visually interpret printed or digital information without assistive technology, Mr. Soto depends on businesses to design, construct, and maintain their websites in a manner that is compatible with screen-reading software.

23. For Mr. Soto, accessible online shopping is essential to his independence. As a

legally blind consumer, he cannot visually browse retail stores or product displays without assistance. He therefore relies heavily on accessible ecommerce websites to research, evaluate, and purchase products suitable for his visual condition. This includes **sunglasses**, which he requires to reduce glare sensitivity caused by Wet AMD and to minimize the visibility of retinal scarring that draws unwanted attention in public. When websites lack proper alternative text, labeled controls, or navigable structure, Mr. Soto is unable to obtain the same information available to sighted shoppers and is denied equal access to the digital marketplace.

24. Upon information and belief, **Look Optic, LLC** is a corporation organized under the laws of a state other than New York, with its principal place of business located outside New York State. Defendant owns, operates, and controls the commercial retail ecommerce Website **www.lookoptic.com** (the "Website"), through which it markets, displays, and sells sunglasses, eyewear, and related accessories to consumers throughout the United States, including residents of New York. Defendant derives substantial revenue from interstate commerce and transacts business within this District by offering its products for direct online purchase and shipment to New York consumers.

## STATEMENT OF FACTS

### *Plaintiff's Attempts to Access Defendant's Websites*

25. On **February 10, 2026**, **February 11, 2026**, **March 9, 2026**, and **April 21, 2026**, Plaintiff **Francisco Soto** attempted on four separate occasions to access Defendant's retail ecommerce Website, **www.lookoptic.com**, using the NVDA screen reader on his home computer in New York County. Plaintiff visited the Website for the specific purpose of browsing and purchasing **sunglasses** suitable for his severe visual impairment caused by advanced Wet Age-Related Macular Degeneration ("Wet AMD").

26. Plaintiff specifically attempted to research two products: (1) **Look Optic's "Muse**

**Tints" sunglasses**, and (2) **Look Optic's "Cosmo Sun" sunglasses**. Plaintiff sought these products because Wet AMD causes **extreme glare sensitivity**, photophobia, and discomfort in bright environments. In addition, his condition causes **visible retinal scarring and distortion**, which draw unwanted attention from others. Sunglasses are therefore essential both for **functional mobility** and for **cosmetic comfort**, allowing Plaintiff to feel more confident and less self-conscious in public.

27. Plaintiff attempted to review product names, descriptions, lens tint options, frame shapes, available colors, pricing, and shipping information. He also attempted to use the Website's filter controls to narrow the selection by frame style, lens type, and color. However, the WAVE report for the **Sunglasses** page identified **49 Errors**, including missing alternative text, missing form labels, empty headings, broken ARIA references, redundant links, and contrast failures. These technical defects manifested in concrete barriers for Plaintiff:

> Product images were announced only as "image" with no meaningful alternative text, depriving Plaintiff of information about dress style, neckline, silhouette, or color.
>
> Filter controls were coded with ARIA attributes but lacked proper form labels, causing NVDA to announce them inconsistently or not at all.
>
> Repeated empty buttons and unlabeled interactive elements caused NVDA's focus to jump unpredictably, preventing Plaintiff from understanding how many dresses were available or how to navigate the product grid.
>
> Skipped heading levels and improper ARIA roles disrupted the page's structure, preventing Plaintiff from forming a coherent mental map of the Website.
>
> Contrast errors and missing focus indicators made keyboard navigation inconsistent and disorienting.

Because of these barriers, Plaintiff could not reliably navigate the Sunglasses collection, could not determine which products were suitable for his needs, and could not select any item for further review.

28. Plaintiff also attempted to access the **Men's Readers** and **Progressives** sections of

the Website because these pages contained overlapping product listings, shared navigation components, and similar filtering controls. The WAVE report for the Men's Readers page identified **48 Errors**, including 46 missing form labels, missing alternative text, empty headings, broken ARIA references, and 123 contrast issues. These failures created additional barriers:

-  NVDA announced interactive elements as "button," "link," or "blank," without context.
-  Product cards were read as a confusing sequence of unlabeled links and repeated text.
-  Improper ARIA roles caused NVDA to skip or repeat sections, making navigation unpredictable.
-  Missing alternative text prevented Plaintiff from identifying product differences or selecting items for comparison.

29. On each of the four dates, Plaintiff attempted to evaluate the **Muse Tints** and **Cosmo Sun** sunglasses to determine which would best reduce glare, provide comfort outdoors, and minimize the visibility of his eyes in public. Because the Website lacked accessible coding, Plaintiff was unable to obtain the same information available to sighted users and could not complete a purchase.

**Systemic Barriers Confirmed by WAVE**

30. The WAVE reports confirm that the barriers Plaintiff encountered were not isolated to a single page but were systemic across the Website. The Sunglasses report identified **49 Errors**, **569 contrast issues**, and **110 alerts**, while the Men's Readers report identified **48 Errors**, **123 contrast issues**, and **874 alerts**. These findings demonstrate that Defendant's Website is not designed, constructed, maintained, or operated in a manner compatible with screen-reader technology.

31. The combination of missing alternative text, unlabeled and orphaned form controls,

broken ARIA references, improper heading structure, contrast failures, empty buttons, and redundant links prevents blind users from perceiving, navigating, and interacting with the Website on equal terms with sighted users.

**Systemic Barriers Confirmed by SORT SITE**

32. In addition to the WAVE findings, Plaintiff conducted an automated SortSite accessibility audit of Look Optic's Website. Even at only **24% completion**, the SortSite scan identified **19 Level A violations across 128 pages**, including: keyboard-inaccessible controls on **116 pages**, missing alternative text on **78 pages**, improper or illegal ARIA naming on **102 pages**, contrast failures on **34 pages**, broken focus outlines on **39 pages**, decorative images lacking null alt attributes, invalid ARIA roles, nested interactive elements (including <a> elements inside <a> and <button> elements inside <a>), missing language attributes, improper list structure, and autoplaying videos and animated images longer than five seconds without pause controls. These findings confirm that the accessibility barriers Plaintiff encountered are **systemic**, **site-wide**, and **inherent to Look Optic's design and coding practices**, rendering the Website incompatible with screen-reader technology and WCAG 2.1 AA standards.

**Plaintiff's Concrete Injury and Intent to Return**

33. Plaintiff's injuries are concrete, particularized, and ongoing. Plaintiff attempted to access Defendant's Website for the specific purpose of purchasing sunglasses necessary for his visual condition and daily functioning. His shopping objectives were personal, medically necessary, and tied to specific products he attempted to review.

34. Plaintiff remains highly interested in purchasing sunglasses from Defendant and intends to return to the Website as soon as it is made accessible. His intent to return is credible because:

-  He continues to require sunglasses for glare reduction and cosmetic comfort due to Wet AMD.

-  Defendant offers specific products (including the **Muse Tints** and **Cosmo Sun**) that Plaintiff has been unable to evaluate elsewhere.

-  He has no alternative means of independently evaluating these products without an accessible Website.

-  He has demonstrated a history of attempting to access the Website for the purpose of making a purchase.

35. Defendant's ongoing operation of an inaccessible Website deters Plaintiff from attempting to use it again until it is remediated. Plaintiff's injury is ongoing because Defendant has no policy or plan to ensure accessibility, and the barriers he encountered remain uncorrected.

36. Defendant's failure to design, construct, maintain, and operate its Website in a manner compatible with screen-reader technology constitutes discrimination under Title III of the ADA. Defendant's inaccessible Website denies blind consumers equal access to the goods and services it offers to the general public and prevents blind users from participating in the digital marketplace on equal terms.

## CLASS ACTION ALLEGATIONS

37. Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. Plaintiff seeks certification of a nationwide class consisting of:

> All legally blind individuals in the United States who have attempted to access www.lookoptic.com and, as a result of Defendant's failure to design, construct, maintain, and operate the Website in an accessible manner, were denied equal access to the goods, services, and information offered thereon.

38. Plaintiff also seeks certification of a New York subclass consisting of:

> All legally blind individuals residing in the State of New York who have attempted to access

www.lookoptic.com and were denied equal access to the goods, services, and information offered thereon.

39. The members of the Class and Subclass are so numerous that joinder of all members is impracticable. Defendant operates a nationwide ecommerce platform and markets its sunglasses and eyewear products to consumers throughout the United States. Upon information and belief, **thousands of blind and visually impaired individuals** have attempted to access the Website and have been denied equal access due to the systemic accessibility barriers confirmed by WAVE audits.

40. Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual members. These common questions include, but are not limited to:

- Whether Defendant's Websites contains accessibility barriers that prevent blind individuals from accessing its goods and services;
- Whether Defendant's failure to make its Websites accessible violates Title III of the ADA;
- Whether Defendant's failure to maintain accessible digital content violates New York State and New York City disability rights laws;
- Whether Defendant's conduct constitutes ongoing discrimination against blind consumers; and
- Whether injunctive relief is warranted to require Defendant to bring its Websites into compliance with WCAG 2.1.

41. Plaintiff's claims are typical of the claims of the Class and Subclass because Plaintiff, like all members of the Class, is legally blind, uses screenreading software, and was denied equal access to Defendant's Websites due to the same systemic accessibility barriers identified in the WAVE reports.

42. Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass. Plaintiff has retained counsel experienced in ADA litigation, class actions, and digital

accessibility matters.

43. Defendant has acted or refused to act on grounds generally applicable to the Class and Subclass, making final injunctive relief appropriate with respect to the Class as a whole. Defendant continues to operate inaccessible Websites without any policy, plan, or practice to ensure accessibility, thereby subjecting all blind users to the same discriminatory barriers.

44. Certification under Rule 23(b)(2) is appropriate because Defendant has failed to design, construct, maintain, and operate its Websites in compliance with WCAG 2.1, and because Defendant's actions apply generally to all blind individuals who attempt to use the Websites. Declaratory and injunctive relief is the only appropriate remedy to ensure equal access for Plaintiff and the Class.

**FIRST CAUSE OF ACTION**
**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.)***

45. Plaintiff **Francisco Soto**, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

46. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

47. Defendant's Website, **www.lookoptic.com**, is a service of a place of public accommodation and a digital gateway through which Defendant offers goods, services, privileges, and advantages to the general public. As such, the Website must be equally accessible to all consumers, including blind and visually impaired individuals who rely on screen-reading technology.

48. Defendant has failed to design, construct, maintain, and operate its websites in a

manner that is fully accessible to blind and visually impaired individuals, in violation of Title III of the ADA and its implementing regulations.

49. Defendant's Website, **www.lookoptic.com**, is a service of a place of public accommodation and a digital gateway through which Defendant offers goods, services, privileges, and advantages to the general public. As such, the Website must be equally accessible to all consumers, including blind and visually impaired individuals who rely on screen-reading technology.

50. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

51. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

52. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class under the ADA, has a physical disability that substantially limits his major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)–(2)(A). Plaintiff has been denied full and equal access to Defendant's Website, **www.lookoptic.com**, has not been provided services that are provided to nondisabled

patrons, and has been provided services that are inferior to those provided to nondisabled persons.

53. Defendant has failed to take any prompt or equitable steps to remedy the discriminatory conduct, and the violations are ongoing. Upon information and belief, Defendant has received prior notice of these accessibility failures through consumer complaints, automated audit findings, and industry-standard compliance tools. Despite this notice, Defendant has failed to implement WCAG-compliant remediation, demonstrating a pattern of disregard for its obligations under federal law.

54. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

**SECOND CAUSE OF ACTION**
**(New York State Human Rights Law)**
**("NYSHRL")**

55. Plaintiff, **Francisco Soto,** on behalf of himself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

56. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

57. Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

58. Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, **www.lookoptic.com**, within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

59. Plaintiff has visited the Websites on a number of occasions and has encountered barriers to him access that exist.

60. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

61. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

62. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating websites that are inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of these sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

63. The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because

of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

64. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

65. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

66. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

67. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

68. Plaintiff repeats and realleges every allegation contained in the foregoing paragraphs as if fully set forth herein.

69. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes Defendant denies, that Defendant's websites contains access barriers denying blind customers full and equal access to the products, services, and facilities offered

throughout the websites.

70. A judicial declaration is necessary and appropriate at this time so that the parties may know their respective rights and duties and act accordingly.

**THIRD CAUSE OF ACTION**
**(Violation of New York State Civil Rights Law)**
**("NYCRL")**

71. Plaintiff, **Francisco Soto,** on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

72. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Notice to Attorney General)

73. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

74. No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

75. § 292 of Article 15 of the N.Y. Executive Law deems a disability, a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

76. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as

Defendant's Website, **www.lookoptic.com**, are places of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

77. Defendant intentionally and willfully failed to remove the barriers on their Websites, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

78. Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

79. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id..*.

80. Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

**FOURTH CAUSE OF ACTION**
**(Violations of the New York City Human Rights Law)**
**("NYCHRL")**

81. Plaintiff, **Francisco Soto,** on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

82. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions,

of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

83. Defendant is subject to NYCHRL because it owns and operates the Website, www.lookoptic.com, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

84. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

85. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

86. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

a. constructed and maintained Website that are inaccessible to blind class members with knowledge of the discrimination; and/or

b. constructed and maintained Website that are sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c. failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

87. Defendant has failed to take any prompt and equitable steps to remedy the

discriminatory conduct as these violations are ongoing.

88. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Websites under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

89. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

90. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

91. Plaintiff is also entitled to reasonable attorneys' fees and costs.

92. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## FIFTH CAUSE OF ACTION
**(Declaratory Relief)**

93. Plaintiff, Francisco Soto, on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

94. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that their Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws

including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq*., prohibiting discrimination against the blind.

95. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

- A preliminary and permanent injunction prohibiting Defendant from violating Title III of the ADA, 42 U.S.C. § 12182 et seq.;
- A preliminary and permanent injunction requiring Defendant to take all steps necessary to make **www.lookoptic.com**, fully accessible to and usable by blind and visually impaired individuals, including through adoption and maintenance of WCAG-conforming accessibility measures;
- A declaration that Defendant owns, maintains, controls, and/or operates its website in a manner that discriminates against blind individuals and fails to provide equal access as required by law;
- An order certifying the proposed Class and New York Subclass under Fed. R. Civ. P. 23, appointing Plaintiff as Class Representative, and appointing her counsel as Class Counsel;
- An award of costs, litigation expenses, and reasonable attorneys' fees to the fullest extent permitted by law; and
- Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
June 24, 2026

Respectfully submitted,
JOSEPH & NORINSBERG
Attorneys for Plaintiff
By: *<u>/s/ Robert L. Schonfeld</u>*
ROBERT L. SCHONFELD
825 Third Avenue, Suite 2100
New York, New York 10022
(212) 227-5700
rschonfeld@employeejustice.com